UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LEONARDO ALBEIRO PENARANDA BLANCO, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 2:26-cv-00184-JRO-MJD |
| BRISON SWEARINGEN, SAMUEL OLSON, TODD M. LYONS, MARKWAYNE MULLIN, and TODD BLANCHE,[1] | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Leonardo Albeiro Penaranda Blanco, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA.

Petitioner also seeks relief under the Administrative Procedure Act ("APA") and the Fifth Amendment's Due Process Clause. But Respondents did not abuse any discretion as Petitioner alleges, and his current detention does not violate

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche (as Acting Attorney General of the United States) is automatically substituted for Respondent Pamela Jo Bondi as a party in this suit.

due process.  The Court therefore **DENIES** the Petition for Writ of Habeas Corpus.

Dkt. [1].

## I.  BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Colombia.  Dkt. 1 at 5; Dkt. 7-1 at 1.  On or about December 6, 2022, he entered the United States without inspection.  Dkt. 1 at 5; Dkt. 7 at 3; Dkt. 7-1 at 2.  He was apprehended a short time later by immigration authorities and paroled into the country pursuant to 8 U.S.C. § 1182(d)(5).  Dkt. 1 at 5; Dkt. 7-1 at 11–12.  His parole expired on February 6, 2023.  Dkt. 7-1 at 11.

Three years later, on February 5, 2026, Petitioner reported to a federal immigration office in Chicago at the direction of ICE.  Dkt. 1 at 5; Dkt. 7 at 3.  That same day, ICE officers issued and served an I-200 warrant for his arrest and took him into custody "pending immigration proceedings."  Dkt. 7-1 at 3, 4.  Petitioner was also issued a Notice to Appear ("NTA"), which initiated removal proceedings.  Dkt. 7-1 at 5–8.  The NTA charges Petitioner as removable based

2

on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). *Id.*

Petitioner remains in detention at the Clay County Jail in Brazil, Indiana. Dkt. 1 at 6. His removal proceedings are ongoing, and he has applied for asylum. Dkt. 1 at 5–6. Petitioner requested a bond hearing in immigration court, but an immigration judge denied that request on March 11, 2026, citing the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025).

Petitioner filed the instant habeas petition on March 16, 2026. Dkt. 1. He names as Respondents Brison Swearingen, Sheriff of the Clay County Jail; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Todd Lyons, Acting Director of ICE; Samuel Olson, Director of the Chicago ICE Field Office; and Todd Blanche, Acting Attorney General of the United States. Dkt. 1 at 3–5.

## B.    Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226. While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

3

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"— "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) generally requires the detention and expedited removal of "arriving" aliens and certain other aliens determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation.   8 U.S.C. § 1225(b)(1).  Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.  With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  In other words, detention is mandatory pending removal proceedings.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a) (emphasis added).  Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien

"falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.  DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents.  Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission."  Petitioner argues that Section 1226(a) governs his detention and that he not only has a right to a bond hearing but is entitled to immediate release because he alleges "in some cases, Immigration Judges have failed to conduct neutral, individualized bond hearing[s]" when "ordered by the habeas court."  Dkt. 10 at 4.  Petitioner also brings claims under the APA and the Fifth Amendment's Due Process Clause.[2]  Ultimately, he is not entitled to the relief he seeks.

## A.    Section 1225 Applies to Petitioner

Section 1225's plain terms require Petitioner's detention pending his removal proceedings.  When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin,* 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation

---

[2] In his petition, Petitioner argues that the Court should not require exhaustion of administrative remedies in this case.  Dkt. 1 at 9–11.  Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 7, 9, so the Court does not address the issue.

omitted).  In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole.  *Id.* at 852.  Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ."  *Id.*

To start, Petitioner is an "applicant for admission."  The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1).  While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader.  "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted.  He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings,* 583 U.S. at 287.  No party argues that the former applies in this case. Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an

alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country. Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1. "Seeking Admission"

First, Petitioner suggests that Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry at the country's borders and ports of entry. Dkt. 1 at 6; Dkt. 10 at 2–3.

The Seventh Circuit—in dicta and an emergency stay posture on a non-habeas matter—has preliminarily agreed with Petitioner's reading. *See Castanon v. U.S. Dep't Homeland Sec.,* 161 F.4th 1048, 1060–63 (7th Cir. 2025). So too have other judges within this District. *See, e.g.,* *Alejandro v. Olson,* --- F. Supp. 3d ---, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal,* No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the

respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). While these decisions warrant serious consideration, they are not binding upon this Court. The Seventh Circuit has emphasized that decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991). And "district court opinions lack precedential force even vis-à-vis other judges in the same judicial district." *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted).

Respectfully, this Court reads Section 1225(b)(2)(A) differently, in line with the only appellate courts to date to have addressed the precise issue on the merits in a habeas action—*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)—as well as other district court judges within the Seventh Circuit.[3]

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026); *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read

---

[3] *Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A). Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission." *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous). This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States. *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers." The provision's use of "or otherwise" indicates that

9

"'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see also Avila*, 170 F.4th at 1135 n.4. Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." (emphasis added). Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission." In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225. It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect. For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States. Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation. *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States. But that is a feature of Section 1225, not a bug. The INA defines "admission" as "the lawful entry of the alien into the United

States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Petitioner never effected a *lawful* entry into the country.  He was not admitted.  In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission."  This is not a novel or even recent understanding of our immigration laws.  In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . .  The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original).  Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

### 2.    1225 Versus 1226

Second, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), "applies to people charged as being inadmissible, including those who entered without inspection."  Dkt. 1 at 8; *see also id.* at 12.  The Court also rejected this argument in a previous Order.  *Demir*, 2026 WL 706485, at *5–6.  Petitioner's argument incorrectly presumes that Sections 1225 and 1226 are mutually

11

exclusive. Other courts in this District have made this presumption explicit by holding that once the Government has already invoked its authority under Section 1226(a) by arresting an alien pursuant to an I-200 warrant, the Government is limited to the process described in Section 1226 and is barred from relying upon Section 1225.[4] *See, e.g., Mohammed v. Olson*, No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *3 (S.D. Ind. Dec. 10, 2025) ("[T]he Government has affirmatively decided to treat' the Petitioner 'as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." (quoting *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025)).

But, respectfully, nothing in the plain text of Sections 1225 and 1226 suggests that the mandates and procedures in these sections are mutually exclusive. They merely overlap. *See Buenrostro-Mendez*, 166 F.4th at 505–06; *Avila*, 170 F.4th at 1137. First, much of Section 1226 applies expressly to *admitted* aliens who may be arrested, detained, and removed for various reasons, such as committing certain criminal acts. *E.g.*, 8 U.S.C. §§ 1226(c)(1)(B), (C) (referring to 8 U.S.C. § 1227(a)(2)). When an arrestee is an admitted alien, Section 1226's bond provision clearly applies. But this does not necessarily

---

[4] Petitioner relatedly argues that "when ICE re-detained [him], the Form I-213 [Record of Deportable/Inadmissible Alien] charges [him] under both 8 U.S.C. § 1226(a)(6)(A)(i) and 8 U.S.C. § 1226(a)(7)(A)(i)." Dkt. 10 at 3. Not so. Those statutory provisions do not exist; it appears that he intended to cite 8 U.S.C. § 1182 instead. The Form I-213 he references lists the "current administrative charges" against him consistently with the NTA: 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). *See* Dkt. 7-1 at 1–2, 5–8.

imply that the bond provision must also apply when an arrestee is an *unadmitted* alien who falls squarely within the plain meaning of Section 1225(b)(2)(A)'s mandatory detention provision. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 ("Section [1226] does not purport to overrule the mandatory detention requirements . . . in section [1225](b)(1) and (2).").

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.* Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A)

over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226, as explained above. Further, Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Government is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. It harmonizes the two provisions. At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy.").

\* \* \*

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade

14

inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not.  As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity."  *Buenrostro-Mendez,* 166 F.4th at 499; *see also Avila,* 170 F.4th at 1135–36; *Torres v. Barr,* 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully").  Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

These concerns are muted somewhat in Petitioner's case: his arrest occurred when he faithfully reported to an ICE office approximately three and a half years after his arrival.  But granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time.  And Petitioner expressly argues this point.  Dkt. 10 at 2–3.  That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a).  It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned.  *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 140 (2020) ("Like an alien detained after arriving at a port of entry,

15

an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).  As he is not eligible for a discretionary bond hearing, the Court does not address his argument for immediate release due to "some" immigration judges' alleged failure to conduct "neutral, individualized" bond determinations.  Dkt. 10 at 4.

## B.   Administrative Procedure Act

Petitioner further argues that Respondents' decisions (1) to revoke his "release or parole from custody" despite "no changes to [the] facts or circumstances since the agency made its initial custody determination" and (2) to detain him "without consideration of his individualized facts and circumstances" (i.e., a bond hearing) constitute agency action that is an "abuse of discretion" in violation of the Administrative Procedure Act ("APA").  Dkt. 1 at 12–13 (quoting 5 U.S.C. § 706(2)(A)).  The Court disagrees on both fronts.

Under the APA, a reviewing court may hold unlawful and set aside "final agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §§ 704, 706.  The scope of the Court's "abuse of discretion" review is "narrow" and limited to whether the agency "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts found and

the choice made." *Dep't of Commerce v. New York,* 588 U.S. 752, 773 (2019); *see also Smith v. Garland,* 103 F.4th 1244, 1252 (7th Cir. 2024) (noting the court "reviews agency determinations with great deference" and "cannot substitute its judgment for that of the agency" (citations omitted)).

### 1.    **Parole Revocation**

Petitioner's first APA argument is that Respondents "abused their discretion" by detaining him because "there have been no changes to his facts or circumstances . . . that support revocation of his release or parole from custody." Dkt. 1 at 13. The record demonstrates otherwise. Since he last entered the country, Petitioner has been an "applicant for admission" regardless of his temporary parole, which expired over three years ago. Respondents' decision to detain him without a bond hearing reflects that status.

Petitioner entered the United States without inspection on or about December 6, 2022. Dkt. 1 at 5; Dkt. 7-1 at 2. He was apprehended upon entry by immigration authorities and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). Dkt. 7-1 at 11. Under that statutory provision, the Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5). The parole "shall not be regarded as an admission of the alien." *Id.* Moreover, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the

17

custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* The regulations implementing 8 U.S.C. § 1182(d)(5) further provide that parole "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii). At that time, the alien "shall be restored to the status that he . . . had at the time of parole." *Id.* § 212.5(e)(2)(i).

Petitioner recognizes in reply that his parole expired or "automatically terminated" after one year—on February 6, 2023. Dkt. 7-1 at 11; Dkt. 10 at 9. The regulations did not require notification of that termination let alone an individualized determination or hearing. *See Marc v. Olson*, No. 4:26-cv-00031-TWP-KMB, 2026 WL 498656, at *2 (S.D. Ind. Feb. 23, 2026) (discussing 8 C.F.R. § 212.5(e)(1)(ii) and noting "even if [alien habeas petitioner] was granted humanitarian parole, it terminated automatically . . . , and regulations do not appear to require notice, individualized determination, or hearing"). Moreover, upon termination, Petitioner was "restored to the status that he . . . had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). That meant Petitioner—in his own words—"was restored to a noncitizen not admitted or paroled in the U.S." Dkt. 9 at 10.

As established above, aliens present in the country without admission are "applicants for admission" and generally subject to *mandatory* detention pending removal proceedings under 8 U.S.C. § 1225(b)(2)(A). *See supra*, Section II.A. Petitioner is an applicant for admission, and, as Respondents argue, that status

18

has never changed. Dkt. 7 at 17. Accordingly, he is subject to mandatory detention without bond pending removal proceedings. ICE's decision to detain Petitioner in February 2026 "pending immigration proceedings"—despite his prior and expired parole—was not an abuse of discretion. Dkt. 7-1 at 3. In fact, Section 1225(b)(2)(A) required that action.

## 2.    Denial of Bond Hearing

Petitioner's second APA argument fares no better. As best as the Court can tell, he contends that Respondents abused their discretion by detaining him without providing a bond hearing to "consider[] . . . his individualized facts and circumstances" or "ma[ke] any determination that he is a flight risk or danger to the community." Dkt. 1 at 13. Petitioner points to an immigration judge's order denying his request for a bond hearing, which expressly states the agency's rationale for doing so was that the "Court lacks jurisdiction over bond proceedings," citing the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings"). *See* Dkt. 1-7 at 2.

By framing his argument in this way, Petitioner not so much challenges the agency's rationale as restates his statutory argument that the agency erroneously subjected him to mandatory detention pursuant to Section 1225(b)(2)(A). Indeed, he essentially paraphrases the essence of the bond

19

provision of Section 1226(a) by stating "Respondents are required to make an individual finding of Petitioner's danger to the community or [whether he] is a flight risk via a neutral decisionmaker." Dkt. 1 at 13. This may be an argument that the agency's action is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law," 5 U.S.C. § 706(2)(C) & (D)—which, as discussed above, it is not. But it does not appear to be an argument that the agency's action was arbitrary, capricious, or an abuse of discretion.

Regardless, the agency's rationale survives APA review. The immigration judge's order states that the agency denied Petitioner's bond hearing because "the Court lacks jurisdiction over bond proceedings," citing *Matter of Yajure-Hurtado* in support. Dkt. 1-7 at 2. This shows that the agency "examined the relevant data" by implicitly noting that Petitioner is an "applicant for admission" and subject to mandatory detention under Section 1225(b)(2)(A) without a bond hearing, and "articulated a satisfactory explanation for [its] decision" by expressly noting that the law precludes a bond hearing. *Dep't of Commerce*, 588 U.S. at 773. Petitioner is not entitled to relief on his APA claims.

**C.     Due Process**

Finally, Petitioner argues his detention without bond pending removal proceedings violates his due process rights under the Fifth Amendment. Dkt. 1 at 11. The Court disagrees.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent."

20

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003).  That holding settles the issue. And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case.  *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that due process requires an "individualized determination" of "whether he is a flight risk or a threat to the community."  Dkt. 8 at 11.  But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Demore*, 538 U.S. at 528.  Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, dkt. 1 at 11, but that case is distinguishable.  There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention.  In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point."  *Zadvydas*, 533 U.S. at 697.  Petitioner's

21

detention here is a detention pending removal proceedings.  Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701.  Petitioner has been detained by ICE pending his removal proceedings for approximately two and a half months.  Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Leonardo Albeiro Penaranda Blanco's Petition for Writ of Habeas Corpus and **DISMISSES** this case with prejudice.  Dkt. [1].  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 4/22/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email